UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MERCHANT & GOULD, P.C.,                    CIVIL NO. 09-3144 (JRT/JSM)

      Plaintiff,

v.                                         REPORT AND RECOMMENDATION


PREMIERE GLOBAL SERVICES, INC.,

      Defendant,

v.

ADVANSTAR COMMUNICATIONS INC.,

      Third-Party Defendant.


The above matter came on before the undersigned upon defendant Premiere Global Services, Inc.'s Motion to Dismiss [Docket No. 29]; Third-Party Defendant Advanstar Communications Inc.'s Motion for Summary Judgment [Docket No. 34]; and plaintiff's Motion for Leave to File Its First Amended Complaint [Docket No. 41]. John A. Clifford, Esq. appeared on behalf of plaintiff; David T. Schultz, Esq. appeared on behalf of Premiere Global Services, Inc.; and Katrina M. Giedt, Esq. appeared on behalf of Advanstar Communications Inc.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

I.      **BACKGROUND**

A.      **Initial Complaint**

On October 21, 2009, the initial Complaint in this matter was served by plaintiff Merchant & Gould P.C. ("M&G") on defendant Premiere Global Services, Inc. ("PGSI"). See Docket No. 1 (Notice of Removal).   The facts alleged in the Complaint are as follows:

On information and belief,[1] PGSI has a full time sales representative located in Saint Paul, Minnesota and regularly does business in Minnesota. See Complaint, ¶ 2. PGSI distributes, for a fee, commercial advertisements and other communications of its customers through hundreds or thousands of faxes to owners of fax machines, through a process known as "fax blasting or "junk faxing." See Complaint, ¶ 2 [Docket No. 1, Ex. A].   Between January of 2008 and the present, PGSI caused advertisements to be distributed via facsimile transmission to M&G, which offered goods or services of various third parties to M&G or its employees. Id., ¶ 3.  At least 200 of these faxes were sent by PGSI and received by M&G's fax machines. Id.  Upon information and belief, these fax transmissions were unwanted commercial advertising and there was no pre-existing or established relationship between M&G and PGSI or between M&G and any of the third parties who used PGSI to send junk faxes. Id., ¶ 4.  Upon information and belief, PGSI caused similar or identical fax transmissions to be sent to a large number of businesses and individuals, with whom it had no prior business relationship, offering the services of third parties. Id., ¶ 5.  Several of the fax transmissions sent by PGSI to

---

[1]      At various times in its Complaint and proposed amended complaint, M&G alleged certain facts "upon information and belief."   At this juncture, the Court has no understanding as to why certain facts were stated in this manner, and other facts were not.

M&G included "spoofed" or inaccurate sending identification data, or op-out information that was illegible or too small to survive fax transmission or were otherwise ineffective. Id., ¶¶ 6, 7.

M&G brought a claim against PGSI under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Id., ¶ 8.  M&G requested damages and financial compensation for PGSI's willful violation of the Act including $500 per fax transmission, "enhanced damages," legal fees and administrative costs.  Id., ¶¶ 11-13.  M&G also sought an injunction preventing a further violation of § 227 by PGSI and all others acting in concert with it.  Id., ¶ 14.

On November 6, 2009, PGSI removed this case to federal court.  See Docket No. 1.  On November 13, 2009, PGSI answered M&G's Complaint.  See Docket No. 6.

### B.   Third Party Complaint against Advanstar Communications Inc.

On November 25, 2009, PGSI filed a Third Party Complaint against Advanstar Communications Inc. ("Advanstar").  See Docket No. 8.  The Third Party Complaint alleged as follows:  PGSI was the parent company of Xpedite Systems, LLC d/b/a Premiere Global Services ("Xpedite"), which was not a party to the present action.  See Third-Party Complaint, ¶ 1.  Xpedite provided electronic transmission services to manage its clients' critical information distribution for transaction-based services.  Id., ¶ 5.

Advanstar entered into a subscriber service agreement with Xpedite in January 2002 and again in 2009.  Id., ¶ 6, Ex. 1.  Under the service agreement, Advanstar acknowledged that Xpedite had no control over the content of any information or any of the distribution lists provided by Advanstar and Advanstar agreed not to transmit any

content through Xpedite that was unlawful and to use Xpedite's services in accordance with the law.  Id., ¶¶ 8, 9, 11, 13.  Advanstar also warranted to Xpedite that any and all distribution lists provided by Advanstar to Xpedite were based upon permission or an established business relationship and were not obtained through improper methods, all messages sent using Xpedite's services would contain the valid name and contact information for Advanstar, and Advanstar would promptly comply with any "do not call" or "do not send" requests.  Id., ¶¶ 10, 12.  Further, Advanstar agreed to indemnify, defend and hold harmless Xpedite, its officers, directors and affiliates, (including PGSI as the parent), from all claims, losses, damages and penalties, including attorney's fees, arising out of Advanstar's use of Xpedite's services. Third-Party Complaint, ¶¶ 14, 19, Ex. 1 at p. 3 of 12 (January 2002 Service Agreement); Ex. 1 at p. 8 of 12 (Paragraph 5.4 of March 2009 Service Agreement).

PGSI alleged that on October 21, 2009, M&G served PGSI with the instant action claiming that PGSI committed violations of the TCPA, 47 U.S.C. § 227, which arise solely from facsimile communications allegedly transmitted pursuant to Xpedite's contractual relationship with Advanstar under the service agreement.  Id., ¶¶ 16, 17.

PGSI further alleged that under the TCPA, 47 U.S.C. § 227, Advanstar, as the underlying sender, was ultimately liable for any unsolicited communications, and Xpedite, as a third party transmitter, was not liable for a sender's communications.  Id., ¶ 15.  PGSI asserted claims of contractual indemnification against Advanstar, based on the service agreement between Xpedite and Advanstar, (Id., ¶¶ 19-21), common law contribution and indemnity (Id., ¶¶ 23-25), and breach of contract.  Id., ¶¶ 27-29.

On January 8, 2010, Advanstar served and filed its Answer to the Third Party Complaint.  <u>See</u> Docket No. 27.

### C.   <u>PGSI's Motion to Dismiss</u>

On February 5, 2010, PGSI moved to dismiss M&G's suit, arguing that M&G had sued the wrong defendant.  According to PGSI, it was Xpedite and not PGSI, the parent corporation of Xpedite, that transmits faxes for customers.  <u>See</u> Defendant Premiere Global Service's, Inc.'s Memorandum of Law in Support of Motion to Dismiss ("PGSI Mem.") [Docket No. 31] at p. 5.  PGSI contended that under Minnesota law, a parent corporation could not be liable for the wrongful act of a subsidiary, absent a showing of wrongful conduct, fraud or bad faith, which M&G failed to allege.  <u>Id.</u>  In addition, PGSI argued that Xpedite is a "facsimile broadcaster," which is exempt from liability under 47 U.S.C. § 227 in the absence of a "high degree of involvement" with the entity on whose behalf a facsimile was sent or "actual notice" of an illegal use.  <u>Id.</u> at pp. 7-11.  PGSI submitted that dismissal of M&G's § 227 claim was appropriate because M&G had failed to allege facts to indicate there was a high degree of involvement or actual notice of unlawfulness on the part of Xpedite or PGSI.  <u>Id.</u> at p. 12.

In response, M&G asserted the motion to dismiss was untimely, and even if it were timely filed as a motion for judgment on the pleadings under Rule 12(c) or a summary judgment motion pursuant to Rule 56, material issues of disputed fact defeated the motion.  <u>See</u> Plaintiff Merchant & Gould's Reponses to Defendant Premiere Global's Motion to Dismiss [Docket No. 45] ("M&G Response") at pp. 3-5.  M&G also maintained that it had sued the proper party, PGSI, and had alleged sufficient facts to establish PGSI's liability under 47 U.S.C. § 227.  <u>Id.</u> at pp. 5-7, 9-10.  According

to M&G, if PGSI believed it was exempt from liability based on the Federal Communications Commission's ("FCC") interpretations of the statute, M&G should be permitted to pursue discovery into this defense. <u>Id.</u> at p. 10. In any event, M&G indicated PGSI's motion to dismiss was moot in light of M&G's motion to amend the complaint, which added Xpedite as a defendant and included the facts necessary to address the facsimile broadcaster exemption under 47 U.S.C. § 227. <u>Id.</u> at p. 11.

### D.     <u>Merchant & Gould's Motion to Amend the Complaint</u>

On March 9, 2010, M&G filed a Motion to Amend. <u>See</u> Docket No. 41. The proposed amended complaint added Xpedite as a defendant to the case. <u>See</u> Docket No. 41-2 (red-lined proposed amended complaint), ¶ 3. The proposed amended complaint also proposed adding the following substantive allegations bearing on the motions before this Court:

On information and belief, Xpedite is a wholly owned subsidiary of PGSI and based on the statements of PGSI's attorney, is involved in the commercial distribution of faxes to owners of fax machines, including M&G. <u>Id.</u>, ¶ 3. Additionally, based on counsel's representations, Xpedite sells "fax blasting" or junk faxing" services, which provided unwanted advertising to the residents of the State of Minnesota, including M&G. <u>Id.</u>

Between January 2008 and the present, one or more of the defendants caused advertisements via fax to be distributed to M&G, including 150 such faxes that originated from two specific telephone numbers, which are believed to be controlled or used by one or more of the defendants. <u>Id.</u>, ¶ 4.

The 150 faxes presently known to have been transmitted by defendants to M&G were only the "tip of the iceberg" and M&G believed that many additional unwanted faxes were sent.  Id.

PGSI has actual notice of the illegal nature of its fax blasting business as evidenced by its previous receipt of an official citation from the FCC in a letter dated August 29, 2006, dealing with 88 complaints regarding violations of 47 U.S.C. § 227. Id., ¶ 7, Ex. A.  While this citation had been resolved, the letter informed PGSI that its fax-blasting was prohibited conduct and that it needed to better investigate the nature of the communications it was sending and any pre-existing business relationship with the recipients it intended to rely upon.  Id.

Despite notice of its prior official citation from the FCC, PGSI failed to investigate the nature of the fax transmissions it sent to M&G and failed to take adequate steps to prevent future violations of the applicable statutes and instead engaged in further prohibited conduct.  Id.

In the summer of 2009, M&G received unwanted fax communications distributed by one or more of the defendants offering a discount attendance at a trade show in Las Vegas promoted by Advanstar.  Id., ¶ 8.  M&G entered into a settlement with Advanstar for its violation of 47 U.S.C. § 227 and released its claim against Advanstar.  Id.  As part of the settlement, M&G obtained a written statement from Advanstar that the fax blaster it used to contact M&G was PGSI.  Id., Ex. B  ("Pursuant to Section 3 of the Settlement Agreement, please be informed that the sender was Premier Global Services, Inc, 250 6th Street E. Suite 623, St. Paul, Minnesota 55101, tel. 651-310-9661").  In reliance of this letter, M&G initiated the present action.  Id.

The faxes received from Advanstar led M&G to discover that 150 other faxes it had received, and which are the subject of this action, had been sent from the same outbound fax numbers controlled or used by defendants.  Id.  However, M&G represented that it was making "no claim for further compensation based on the faxes sent on behalf of Advanstar Communications, Inc. that are covered by the settlement previously reached."  Id.

Upon information and belief, M&G stated that defendants exercised through their sales force or others acting in concert with them a "high degree of involvement in fax blasting" by engaging in one or more of the following acts:

> 1) dialing the fax numbers needed to generate the fax transmissions using telephone lines and telephone numbers provided by common telephone carriers and leased or rented to the Defendants;
>
> 2) counseling customers how to evade and defeat "spam filters," "do not call lists," "do not fax lists" and other measures by customers to block unwanted advertising;
>
> 3) advising customers how to use electronic fax messaging to reduce the cost of commercial advertising and shift the cost of paper and ink supplies from the advertiser to the recipient;
>
> 4) spoofing the sender identification information on the faxes it sends so the apparent sender identification provided to the recipient is not the actual location from which the fax was sent;
>
> 5) advising customers how to generate and maintain fax lists, and/or where to obtain lists of working fax numbers, for use in fax blasting;
>
> 6) allowing customers to use the services of the Defendants when the Defendants knew, or should have known, that any representations of the customers that there existed a pre-existing business relationship between the intended recipient of the fax advertising and the customer were false, dubious,

or unreliable, and that any representations by customers that intended fax recipients had "opted in" to receive such communications were false, exaggerated, expired, withdrawn or meaningless;

7) allowing fax transmissions to be sent using the services of the Defendants with inadequate or ineffective "opt out" provisions;

8) exhibiting a willful disregard for the rights of fax recipients and the duties of the Defendants under the Telephone Consumer Protection Act by following a deliberate "don't review," "don't ask" and "don't investigate" policy to knowingly or negligently send fax messages without reviewing the content thereof, the compliance thereof with the applicable laws, the distribution lists used, the existence, or non-existence of any prior relationship with the recipients, and attempting to completely delegate legal responsibility for compliance with the Telephone Consumer Protection Act to the customers of the Defendants when the Defendants knew and/or should have known that they were participating in material violations of the Telephone Consumer Protection Act on a regular basis and with high frequency; and/or

9) advising customers otherwise how to use the technology and skills allegedly possessed by the Defendants to over-ride and circumvent the wishes of the recipients of unwanted commercial offers and solicitations, all in violation of The Telephone Consumer Protection Act.

Id., ¶ 11.

M&G stated that these allegations were supported by PGSI's advertising, annual reports, and web page descriptions, as well as the FCC's administrative record, which described PGSI's business activities as mass marketing technology and those skills of the company as generally alleged above.  Id., ¶ 12.

PGSI opposed amendment of the Complaint on grounds that the claims against both it and Xpedite were futile.

E.     **Advanstar's Motion for Summary Judgment**

On February 19, 2010, Advanstar moved for summary judgment against PGSI. See Docket No. 34.   Advanstar contended that its settlement with M&G prior to the commencement of M&G's suit against PGSI was fatal to PGSI's Third Party Complaint against Advanstar for contractual indemnity, common law indemnity and contribution and breach of contract, where neither the Complaint nor proposed amended complaint sought relief against defendants for any of the faxes sent on behalf of Advanstar.   PGSI countered that because M&G failed to inform PGSI of the settlement with Advanstar until after PGSI filed its Third-Party Complaint, PGSI was entitled to maintain its claim for contractual indemnity against Advanstar to recover attorneys' fees and costs, or in the alternative, should be allowed to seek sanctions from M&G in form of attorneys' fees and costs.

II.    **STANDARD OF REVIEW**

A.     **Motion to Dismiss**

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).   At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under

Rule 8 of the Federal Rules of Civil Procedure and meet the principles recently articulated by the United States Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading requirement does not require detailed factual allegations. <u>Martin v. ReliaStar Life Ins. Co.</u>, Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing <u>Twombly</u>, 550 U.S. at 555). On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Iqbal,</u> 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S., at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.

In summary, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> at 1949 (internal quotation marks and citations omitted). In making this determination, the Court must read the allegations of

the proposed amended complaint as a whole, as opposed to parsing the allegations "piece by piece to determine whether each allegation, in isolation, is plausible." <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009) (citations omitted).

**B.**    <u>**Motion to Amend**</u>

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court.  <u>See</u>, <u>e.g.</u>, <u>Niagara of Wisconsin Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund</u>, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).  The Eighth Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." <u>Ferguson v. Cape Girardeau County</u>, 88 F.3d 647, 650-1 (8th Cir. 1996) (citing <u>Thompson-El v. Jones</u>, 876 F.2d 66, 67 (8th Cir. 1989); <u>Chesnut v. St. Louis County</u>, 656 F.2d 343, 349 (8th Cir. 1981)). Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." <u>Sanders v. Clemco Indus.</u>, 823 F.2d 214, 216 (8th Cir. 1987) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

In this case, where PGSI has alleged that M&G's proposed amendments are futile, this Court will confine its analysis to determining whether the proposed claims state a claim for relief at this stage of the case.  <u>See Zutz v. Nelson</u>, 601 F.3d 842, 850-51 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the <u>Twombly</u> pleading standard. . . .") (citation and marks omitted); <u>In re Senior Cottages of Am., LLC</u>, 482 F.3d 997, 1001 (8th Cir. 2007) (To deny a motion to amend on the ground of futility "means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion."); <u>United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa</u>, 269 F.3d 932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim. . . ."), <u>cert.</u> <u>denied</u>, 536 U.S. 925 (2002).

### C.    <u>Motion for Summary Judgment</u>

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>see</u> <u>also</u> <u>Unigroup, Inc. v. O'Rourke Storage & Transfer Co</u>., 980 F.2d 1217, 1219 (8th Cir. 1999).  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" <u>DePugh v. Smith</u>, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting <u>Anderson</u>, 477 U.S. at 248).

III.   **ANALYSIS**

A.   **PGSI's Motion to Dismiss and M&G's Motion to Amend**[2]

1.   **Is PGSI a Proper Defendant?**

PGSI maintained that M&G's Complaint should be dismissed because it was Xpedite and not PGSI, the parent corporation of Xpedite, which transmits faxes for customers.   See PGSI Mem. at p. 5.[3]   In support, PGSI relied on its 2009 Annual Report, which identified Xpedite as its subsidiary and also provided that PGSI conducts substantially all of the fax blasting business through its subsidiaries.   See Defendant Premiere Global Services, Inc.'s Reply Memorandum of Law in Support of Motion to Dismiss ("PGSI Reply Mem.") at pp. 9-10.   PGSI also relied on the service agreement between Xpedite and Advanstar that was attached to PGSI's Third-Party Complaint, which identified Xpedite, and not PGSI, as the service provider.   Id. at p. 9.

In response, M&G explained that it had sued PGSI and not Xpedite because PGSI and not Xpedite was identified in the settlement agreement between Advanstar and M&G as the entity that sent the faxes to M&G; PGSI had stated in its annual report that it had disclosed liabilities under the TCPA due to PGSI's broadcast faxing, including

---

[2]   M&G's Motion for Leave to File its First Amended Complaint [Docket No. 41] would normally be addressed in an order, rather than in a report and recommendation. However, as the facts and issues bearing on the motions to dismiss and to amend the complaint are sufficiently intertwined, the Court has chosen to address them together as a part of this Report and Recommendation.

[3]   In its response to the M&G's motion to amend the complaint, PGSI did not rest its opposition on the argument that any claim against it was futile because it was Xpedite, and not PGSI, that was responsible for sending faxes to customers.   Instead, the crux of its opposition to the motion to amend was that M&G had failed to allege facts to support its theory that either PGSI or Xpedite had engaged in a "high degree of involvement" in the transmission of faxes to M&G on behalf of Xpedite's customers or were on actual notice of the unlawfulness of the transmissions.

the settlement by PGSI of a TCPA class action law suit; PGSI has had 88 prior complaints sent to the FCC concerning PGSI's compliance with the TCPA and was cited in 2006 by the FCC for its fax blasting activities; and PGSI's website represented that a customer could outsource their faxing and document delivery to PGSI.  See M&G Response at pp. 5-7.[4]

As a preliminary matter, the Court observes that the parties have referenced a number of documents outside of the Complaint in support of their respective positions relative to whether PGSI is a proper defendant.  As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss or motion for judgment on the pleadings.  As the Eighth Circuit noted in Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999):

> When considering a motion for judgment on the pleadings
> (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the

---

[4]      M&G also argued that PGSI's motion to dismiss under Rule 12(b)(6) is untimely because it was filed after PGSI filed its Answer to the Complaint.  See M&G Response at p. 3.  It is true that a motion to dismiss under Rule 12(b)(6) cannot be brought after an answer has been filed.  See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  However, Rule 12(h)(2) of the Federal Rules of Civil Procedure provides that "'[a] defense of failure to state a claim upon which relief can be granted' may be advanced in a motion for judgment on the pleadings under Rule 12(c)."  Id. Consequently, the Court will treat PGSI's motion as if it had been styled a 12(c) motion, and apply the same standard of review it would apply for a 12(b)(6) motion.  Id. (citations omitted); see also Ashley County v. Pfizer, Inc., 901 F.2d 1486, 665 (8th Cir. 2009) (same); Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp.2d 809, 814 (D. Minn. 2010) (citation omitted) ("In resolving a motion for judgment on the pleadings under Rule 12(c), a court applies the same standard used to address a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). That is, in resolving a motion for judgment on the pleadings under Rule 12(c), "a court must to 'accept as true all factual allegations set out in the complaint' and to 'construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor.'"  Ashley County, 552 F.3d at 665 (quoting Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006)).  PGSI conceded that the Court should evaluate its motion under Rule 12(c).  See PGSI Reply Mem. at p. 3.

court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' <u>Missouri ex rel. Nixon v. Coeur D'Alene Tribe</u>, 164 F.3d 1102, 1107 (8th Cir.), <u>cert.</u> <u>denied</u>, ---U.S.----, No. 98-1848, 1999 WL 319349 (U.S. June 24, 1999), as well as materials that are 'necessarily embraced by the pleadings.' <u>Piper Jaffray Cos. v. National Union Fire Ins. Co.</u>, 967 F. Supp. 1146, 1152 (D. Minn. 1997).

<u>See</u> <u>also</u> <u>Groska v. Northern States Power Co. Pension Plan</u>, NO. CIV. 05-114 (JNE/FLN), 2005 WL 3447619 at * 2 n. 1 (D. Minn. Dec. 15, 2005) ("court must convert a motion for judgment on the pleadings to a motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court, <u>see</u> Fed. R. Civ. P. 12(c), unless the materials submitted are matters of public record, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings.") (citations omitted).

Whether or not the Court considers the documents relied upon by the parties as public records or documents necessarily embraced by the pleadings, or converts PGSI's Rule 12(b) motion into a Rule 12(c) motion or a motion for summary judgment under Rule 56(c), the Court concludes that PGSI has been properly sued as a party.

Based on the four corners of the Complaint, the facts alleged support a claim that PGSI violated TCPA as a fax broadcaster by sending out unsolicited faxes to M&G, with whom it had not previous business relationship. <u>See</u> Complaint, ¶¶ 2-7. Similarly, an examination of the facts outside the record (annual reports, service agreement between Xpedite and Advanstar, Advanstar's representations to M&G, PGSI's website), leads this Court to conclude that there is a disputed fact as to whether PGSI was a fax broadcaster, or whether it was Xpedite or PGSI that sent the faxes the M&G. For

example, in support of its claim that it was Xpedite, and not PGSI, that does fax broadcasting, PGSI pointed to its 2009 Annual Report that provides that "[f]ax broadcasters, such as our subsidiary Xpedite Systems, LLC, generally are not liable for their customers' violations of the TCPA. . . ."; its 2008 and 2009 Annual Reports that represented "[w]e conduct substantially all of our businesses through our subsidiaries;" and the fax subscriber service agreement attached to the Third-Party Complaint was between Xpedite and Advanstar.  See Affidavit of JoLynn M. Markison in Support of Motion to Dismiss [Docket No. 57] ("Markison Aff."), Ex. A at pp. 5, 13; Ex. B; Docket 8-1.

On the other hand, PGSI's website as of September 23, 2009 provided that PGSI could send and receive faxes; email documents to any fax machine; provide 30-day online fax storage; provide unique and toll-free fax numbers; could increase customer message delivery success; and avoid black lists.  See Docket No. 67 (April 12, 2010 Letter to the Court Attaching a Portion of the PGSI's Website).   Likewise, PGSI's website as of March 9, 2010 provided that PGSI offered document delivery allowing customers to benefit from "scalable, tailored application design and development"; its "powerful platform" which enabled "automated, high speed document transmission and delivery" for mass distribution via "email and secure fax;" and "regulatory compliance." See Declaration of John A Clifford in Support of Plaintiff Merchant & Gould's Response to Defendant Premiere Global's Motion to Dismiss [Docket No. 46] ("Clifford Decl."). Ex. A.

Further, PGSI's 2008 Annual Report stated in relevant part:

> Federal, state, local and international laws regulating the
> provision of traditional telecommunications service may

> adversely impact our business.  We believe we operate as a non-common-carrier provider of unregulated, enhanced information services.
>
> * * *
>
> <u>We</u> are subject to certain regulations imposed by the FCC . . . , and we may be affected by regulatory decisions, trends or policies issued or implemented by federal, state, local or international telecommunications regulatory authorities.
>
> * * *
>
> <u>Fax broadcaster providers, such as us,</u> generally are not liable for their customer' violations of the TCPA, although fax broadcast providers who have a "high degree of involvement" in their customer's violation of the TCPA may be held liable under certain circumstances under the TCPA. Although <u>we</u> have conducted our operations to meet the fax broadcaster provider exemption, third parties may seek to challenge this exception.

Clifford Decl. Ex. C (emphasis added).

Finally, pursuant to the settlement agreement between Advanstar and M&G, Advanstar has represented that PGSI was its sender, and PGSI was issued a citation in 2006 by the FCC for alleged violations of the TCPA, dealing with PGSI's sending of unsolicited advertisements to fax machines.  <u>Id.</u>, Exs. B, D.

In summary, while there is evidence supporting PGSI's contention that it was not the sender of the faxes to M&G at issue in this case, there is also contrary evidence before this Court suggesting that PGSI could have been and was the sender.  Based on the record before the Court, judgment on the pleadings (or summary judgment) is not appropriate as it relates to whether PGSI is the proper defendant.   In reaching this determination, the Court renders no opinion as to whether PGSI was indeed the actual sender of the faxes to M&G; only that the allegations in the Complaint and the proposed

18

amended complaint sufficiently set forth plausible facts to support M&G's inclusion of PGSI as a defendant in this case.  The Court is confident that PGSI's ultimate role in the faxes will be flushed out through discovery.

### 2. Do M&G's Allegations State a Plausible Claim for Relief Under the TCPA?

In support of its motion to dismiss, PGSI maintained that its subsidiary, Xpedite is a "facsimile broadcaster," and is exempt from liability under the regulations and FCC orders implementing 47 U.S.C. § 227, in the absence of any allegations of a high degree of involvement with the entity on whose behalf a facsimile was sent or actual notice of an illegal use.  See PGSI Mem. at pp. 7-12.  According to PGSI, all that M&G alleged was that PGSI (or Xpedite) transmitted, for a fee, fax advertisements of third parties to it or its employees.  Id. at p. 6; see also PGSI Reply Mem. at pp. 4-6.  Lacking factual allegations that Xpedite or PGSI had supplied fax numbers to transmit the unsolicited advertisements, determined the content of the faxed messages, had any other close involvement with transmission to M&G, or was on actual notice of unlawfulness, PGSI argued that M&G's Complaint was insufficient to impose liability as a matter of law.  Id. at p. 11-12.

In its response to PGSI's motion to dismiss, M&G contended that it had alleged all the necessary elements of the TCPA, including the locations of the parties, the dates of the faxes and the number of faxes, and that the exemption created by the FCC for fax broadcasters is not part of the TCPA.  See M&G Response at pp. 9-10.  Besides, M&G asserted that the motion to dismiss was moot, given its pending motion to amend.  Id. at p. 11.

PGSI disagreed with the suggestion that the proposed amended complaint cured the deficiencies of the Complaint, claiming that the allegations set forth in paragraph 11 of the proposed amended complaint, which were based on "information and belief," were conclusory and speculative, and amounted to nothing more than a recitation of the possible factors that would defeat a recognized fax broadcaster defense.   See Defendant Premiere Global Service, Inc.'s Memorandum of Law in Opposition to Motion to Amend [Docket No. 61] ("PGSI Opp. Mem.") at pp. 3-6.   In particular, PGSI contended that the lack of factual support for M&G's conclusory and speculative allegations was evidenced by M&G's failures to identify customers that it or Xpedite allegedly "counseled" to evade measures to block unwanted advertising; to reference one facsimile that was allegedly "spoofed" in terms of the transmission location; to identify a single communication where PGSI or Xpedite advised a customer about where to obtain fax numbers; to identify a single customer about whom defendants "should have known" that the advertisements by that customer were "false, dubious or unreliable"; to identify a single fax that was allegedly transmitted to it that contained "inadequate or ineffective opt-out provisions;" and to allege any conduct that caused M&G harm, as it failed to identify any customers that sent violative faxes to it.  Id., at p. 6.

As to paragraph 12 of the proposed amended complaint describing PGSI's advertising, annual reports, 10-K reports and web pages, and the administrative record before the FCC describing the business activities of the PGSI, PGSI asserted these allegations did not identify the facts in the advertising, annual reports, 10-K reports, web page descriptions and the administrative record that would demonstrate a high degree

of involvement by PGSI or Xpedite, and were contradicted by other parts of the website and Xpedite's standard service agreement.[5]  Id. at pp. 8-9.

M&G countered that it had sufficiently plead a violation of the TCPA statute in its original Complaint and in its proposed amended complaint, and discovery will help clarify any factual disputes.  See Plaintiff's Reply Memorandum of Law in Support of Its Motion for Leave to File its First Amended Complaint [Docket No. 64] at p. 3.

The TCPA makes it "unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

> (ii) the sender obtained the number of the telephone facsimile machine through--

>> (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

>> (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

47 U.S.C. § 227(b)(1)(C).  An "unsolicited advertisement" is defined by the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).  The TCPA authorizes the FCC to issue regulations to implement subsection (b) of the statute.  See 47 U.S.C. § 227(b)(2).

---

[5]    PGSI did not provide a copy of Xpedite's standard service agreement.  It did attach a copy of its service agreement between Xpedite and Advanstar to its Third Party Complaint.  See Third Party Complaint, Ex. 1.

Subsequent to the passage of the TCPA, the FCC adopted regulations implementing 47 U.S.C. § 227(b)(1)(C).   The pertinent portions of the regulation at issue, 47 C.F.R. § 64.1200, provides as follows: No person or entity may . . . [u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. . . ."  47 C.F.R. § 64.1200(a)(3).  Like § 227(b)(1)(C), the FCC's regulation exempts from liability unsolicited advertisements from a sender with an established business relationship with the recipient; or where the sender obtained the fax number voluntarily from the recipient; or where the fax advertisement included a notice that provides adequate information to the recipient on how to avoid future unsolicited advertisements.  See 47 C.F.R. § 64.1200(a)(3)(i)-(vi).

The FCC's regulation also affirmatively states that  "[a] facsimile broadcaster will be liable for violations of paragraph (a)(3) of this section, including the inclusion of opt-out notices on unsolicited advertisements, if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions."  47 C.F.R. § 64.1200(a)(3)(vii).  A "facsimile broadcaster" is defined as "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee."  47 C.F.R. § 64.1200(f)(6). Consistent with these regulations, in 2004, in an Order of Forfeiture against a fax broadcaster (Fax.com), the FCC concluded that a "fax broadcaster that serves as 'more than a mere conduit for third party faxes' is liable under the TCPA.'"  In the Matter of Fax.com, Inc., 19 F.C.C.R. 748, 755 n. 36 (2004) (citation omitted).

M&G does not dispute that at some point in this litigation, it will have to take on PGSI's position that neither PGSI nor Xpedite can be held liable under the TCPA

because neither had the requisite degree of involvement in, or actual notice of, the unlawful faxes.  Rather the thrust of M&G's argument is that it has adequately plead a cause of action under the express language of the TCPA and it does not need to factually address the "facsimile broadcaster" defense in its complaint; but even if it does, it has now plead sufficient facts to show that PGSI and Xpedite were highly involved in the fax transmissions at issue.

At this juncture, this Court need not decide whether the "facsimile broadcaster exemption" set forth 47 C.F.R. § 64.1200(a)(3)(vii) is a defense to liability (and thus, need not be plead in a complaint), or an element of any action under the TCPA which must be affirmatively addressed in the complaint.  This is because this Court concludes that the proposed amended adequately pleads a violation of the TCPA and sufficient facts to support a claim that PGSI and Xpedite were highly involved and not a mere conduit in the unwanted fax transmissions to M&G and others.  See Texas v. American Blastfax, Inc., 121 F. Supp.2d 1085, 1089-90 n. 6 (W.D. Tex. 2000) (in denying a motion to dismiss, court rejected Blastfax's claim that it was a "'mere broadcaster' of third party advertisements" and instead found it was "far more than a mere conduit for third party faxes" based on allegations in the complaint that Blastfax "maintains and uses a database of recipient fax numbers, actively solicits third party advertisers and presumably reviews the content of the fax advertisements it sends.").

In this case, the proposed amended complaint alleged the following facts: Both PGSI and Xpedite (collectively "defendants") fax commercial advertisements and other communications for their customers to owners of fax machines, through a process known as "fax blasting or "junk faxing."  Proposed Am. Compl, ¶¶ 2, 3.  Between

January of 2008 and the present, defendants faxed advertisements to M&G offering goods or services of various third parties to M&G or its employees.  Id., ¶ 4.  At least 150 of these faxes originated from two phone numbers that one or more of these defendants controlled.  Id., ¶¶ 4, 8.  These fax transmissions to M&G were unwanted commercial advertising and there was no pre-existing or established relationship between the defendants and M&G and any of the third parties who may have used the defendants to send junk faxes to M&G.  Id., ¶ 5.  Several of the fax transmissions sent by defendants to M&G included "spoofed" or inaccurate sending identification data, or opt-out information that was illegible or too small to survive fax transmission or were otherwise ineffective.  Id., ¶¶ 10, 11.

With regards to defendants' level of involvement in the unwanted faxes sent to M&G, M&G stated defendants counseled customers how to bypass "spam filters," "do not call lists," "do not fax lists"; advised the customers how to use their electronic fax service to reduce their advertising costs and shift the cost to recipients, including M&G; assisted the third-party customers at issue in generating a fax list of working fax numbers; allowed their customers to use their services when defendants knew or should have known that the representations by their customers that there was a preexisting or established business relationship between the customers and recipients of the faxes or that the recipients had opted in to receiving the faxes were false; allowed faxes to be sent to M&G by its customers even though it knew that the faxes contained opt-out information that was illegible or too small to survive fax transmission; and advised customers how to used defendants' technology and skill to over-ride and circumvent the wishes of recipients who did not want to receive unwanted commercial

offers and solicitations.  Id., ¶¶ 10; 11 (1), (2), (3), (5) (6), (7) (9).[6]  While the proposed

amended complaint does not contain the level of detail sought by PGSI, these facts,

assumed as true and taken together, state a plausible claim for relief that defendants

had a high degree of involvement in the 150 facsimiles from its customers to M&G or

notice of the unlawful activity of its customers, making it "more than a mere conduit for

third party faxes."  In the Matter of Fax.com, Inc., 19 F.C.C.R. at 755 n. 36.   Stated

otherwise, the factual assertions of the proposed amended complaint provide

defendants with sufficient notice of M&G's claim against them.  See Braden, 588 F.3d at

595 (finding that the district court erred by assuming "that Braden was required to

describe directly the ways in which appellees breached their fiduciary duties. Thus, for

example, the district court faulted the complaint for making 'no allegations regarding the

fiduciaries' conduct.' Rule 8 does not, however, require a plaintiff to plead 'specific facts'

explaining precisely how the defendant's conduct was unlawful. Rather, it is sufficient

for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts

pled 'give the defendant fair notice of what the claim is and the grounds upon which it

rests,' and 'allow [ ] the court to draw the reasonable inference' that the plaintiff is

---

[6]     M&G also alleged that defendants "spoofed" the sender identification information
on the faxes it sent by including a number at the top of the fax that was not the number
from which the transmission originated (see proposed Amended Complaint ¶¶ 9, 11(4)).
However, while such conduct is proscribed by 47 U.S.C. § 227(d)(1) and could
conceivably lend support to M&G's claim that defendants were highly involved in the
transmission of the faxes to M&G, the TCPA does not provide for a private cause of
action for such conduct. See Kopff v. Battaglia, 425 F. Supp.2d 76, 91 (D.D.C. 2006)
(concluding that "Congress plainly opted not to permit a private civil action for violations
of the fax-sender identification requirements . . . [and that t]he fax identification
regulations . . . were issued pursuant to subsection (d) of section 227, and thus there is
no private right of action under the TCPA for violation"); Cf., Missouri ex rel. Nixon v.
American Blast Fax, Inc., 323 F.3d 649 (8th Cir. 2003) (noting that the district dismissed
allegations of statutory violations for omitting information required by TCPA, 47 U.S.C. §
227(d)).

entitled to relief."). Further, while it is understandable that defendants would have preferred that M&G set forth detailed facts as to how defendants counseled customers to bypass filters, the identity of each customer at issue, the details of their advice on how to use their fax services to save money in their advertising, and how they assisted in generating fax number lists for customers, as a practical matter, it would be impossible for M&G to plead this type of information when much of it is in the control of defendants. Id. at 602 ("It would be perverse to require plaintiffs bringing prohibited transaction claims to plead facts that remain in the sole control of the parties who stand accused of wrongdoing.") (citation omitted); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations omitted) (finding that where "certain facts are peculiarly within the possession and control of the defendant," plaintiffs are not prevented from "pleading facts alleged upon information and belief."). Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence. . . ." Twombly, 550 U.S. at 556; see also C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347, 591 F.3d 624, 629 (8th Cir. 2010) (finding that under this standard "a complaint need not include detailed factual allegations").

For all of the reasons stated above, this Court concludes that M&G has stated a plausible claim for a violation of the TCPA against defendants. Therefore, M&G's motion to amend is granted and PGSI's motion to dismiss should be denied as moot.

## B.  Advanstar's Motion for Summary Judgment

Advanstar has moved for summary judgment against PGSI on grounds that its settlement with M&G prior to the commencement of M&G's suit against PGSI is fatal to

PGSI's third party complaint against Advanstar for contractual indemnity, common law indemnity and contribution and breach of contract, where neither the Complaint nor proposed amended complaint seek relief against defendants for any of the faxes sent on behalf of Advanstar.   Specifically, Advanstar argued that PGSI is not entitled to contractual indemnity from Advanstar for any damages paid to M&G, as the service agreements only obligated Advanstar to indemnify PGSI or Xpedite for claims arising out of Advanstar's use of Xpedite's services or for any violation of, or alleged violation of, law with respect to Xpedite's services performed on behalf of Advanstar.   See Third-Party Defendant Advanstar Communications Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment [Docket No. 36] at p. 7.   According to Advanstar, on July 27, 2009, prior to the September 22, 2009 Complaint (served on October 21, 2009), M&G settled all claims arising from facsimiles sent to M&G by, or on behalf of, Advanstar and therefore, the Complaint and proposed amended complaint do not contain claims against Advanstar arising out of Advanstar's use of Xpedite's services or for any violation, or alleged violation, of law with respect to Xpedite's services performed on behalf of Advanstar. Id.; see also Third-Party Defendant Advanstar Communications, Inc.'s Reply Memorandum in Support of its Motion for Summary Judgment [Docket No. 52]  at p. 5; Affidavit of Charles E. Spevacek ("Spevacek Aff."), Ex. C. (July 27, 20098 Confidential  Settlement  Agreement).     Similarly,  Advanstar  contended  that  PGSI's common law contribution or indemnity claim must fail because the Complaint and the proposed amended complaint do not and cannot seek to hold Advanstar liable for the faxes sent on behalf of Advanstar by virtue of the July 27, 2009 settlement.  Id. at pp. 5, 8-9.  Lastly, Advanstar submitted that summary judgment on PGSI's breach of contract

claim must be granted because the alleged liability to M&G stems from customers other than Advanstar. <u>Id.</u> at pp. 9-10.

PGSI acknowledged that Advanstar and M&G had entered into a settlement agreement before the initial Complaint was filed and that M&G had a brought a motion to amend which expressly excluded the facsimiles sent by or on behalf of Advanstar based on this settlement. <u>See</u> Defendant Premiere Global Services, Inc's Memorandum of Law in Opposition to Motion for Summary Judgment at pp. 6, 9 n. 5. Nonetheless, because M&G failed to inform PGSI of the settlement with Advanstar until after PGSI filed its Third-Party Complaint, PGSI submitted it was entitled to maintain its claim for contractual indemnity against Advanstar to recover attorneys' fees and costs. <u>Id.</u> at pp. 7-8. Alternatively, PGSI argued that if this Court determined that there are no claims against Advanstar in M&G's suit, then as a sanction for misrepresenting that the Complaint included alleged violations of the TCPA by Advanstar and concealing the settlement agreement until January 2010, the Court should order M&G to pay PGSI the attorneys' fees and costs it incurred in connection with the filing its Third Party Complaint and responding to Advanstar's motion. <u>Id.</u> at pp. 8-9.

On July 27, 2009, M&G and Advanstar entered into a confidential settlement agreement regarding five facsimile transmissions sent by Advanstar to M&G. <u>See</u> Spevacek Aff., Ex. C. The settlement agreement released Advanstar from any claims M&G had against Advanstar for any faxes sent to M&G on behalf of Advanstar. <u>Id.</u>, Ex. 1, ¶ 4. Under the service agreement between Advanstar and Xpedite, Advanstar only had the duty to indemnify defendants from "any and all claims, losses, damages, penalties or costs (including, without limitation, reasonable attorney's fees) arising out of

Customer's . . . use of the Services . . . violation of or alleged violation of any applicable laws or regulations with respect to the Services, including . . . claims relating to the transmission of unsolicited documents.  See Third Party Complaint, Ex. 1 (Docket No. 8-1 p. 8 of 12), ¶ 5.4.

In light of the July 27, 2009 settlement agreement, the undisputed evidence establishes as a matter of law that Advanstar owes no contractual indemnity to PGSI for claims that never existed.

For the same reason, the common law contribution or indemnity claim cannot survive because the liability charged against defendants does not arise out of Advanstar's conduct.  See City of Willmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872, 874 (Minn. 1994) (contribution); Tolbert v. Gerber Indus., Inc., 255 N.W.2d 362, 366 (Minn. 1977) (indemnity).   Similarly, PGSI's breach of contract claim cannot succeed because there are no damages flowing from any breach of the service agreement between Xpedite and Advanstar.  See Wild v. Rarig, 302 Minn. 419, 440 234 N.W.2d 775, 789 (1975) ("We are of the opinion that when a plaintiff seeks to recover damages for an alleged breach of contract he is limited to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort.") (citations omitted).[7]   On this record, summary judgment on all three claims asserted by PGSI against Advanstar should be granted.

---

[7]     This Court also finds that because defendants did not address their common law contribution, common law indemnity and breach of contract claims in their opposition to the motion for summary judgment, they have abandoned these claims.  See Thomsen v. Ross, 368 F. Supp.2d 961, 974 n. 9 (D. Minn. 2005).

As to PGSI's request that M&G should be sanctioned for somehow leading PGSI to believe that the Advanstar faxes were a part of the case and for concealing the settlement agreement, this request is denied.   Not only does this request have no bearing on Advanstar's motion for summary judgment, but it is not properly before this Court.   PGSI has not a brought a motion for sanctions before the Court against M&G.

For all of the reasons stated above, Third-Party Defendant Advanstar Communications Inc.'s Motion for Summary Judgment should be granted and the Third-Party Complaint be dismissed with prejudice.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendant Premiere Global Services, Inc.'s Motion to Dismiss [Docket No. 29] be **DENIED** as moot.

2.      Third-Party Defendant Advanstar Communications Inc.'s Motion for Summary Judgment [Docket No. 34] be **GRANTED** and the Third-Party Complaint be dismissed with prejudice.

3.      Plaintiff's Motion for Leave to File Its First Amended Complaint [Docket No. 41] be **GRANTED** as set forth in the Report and Recommendation.

4.      Plaintiff shall file its First Amended Complaint on or before **August 10, 2010**.   Defendants shall respond to the First Amended Complaint in a manner that is consistent with the Federal Rules of Civil Procedure

Dated:         August 2, 2010

                                                      s/ *Janie S. Mayeron*
                                                      JANIE S. MAYERON
                                                      United States Magistrate Judge

**NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 16, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 16, 2010**.